**Ex parte Kirt Daylen GARRISON, Relator.**

**No. 01–92–01255–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

April 23, 1993.

Geoffrey W. Hutson, Houston, for appellant.

Phoebe Lester, Gwen H. Slough, Janiece E. Horn, Sahrron K. Wall, Houston, for appellee.

1. Tex.Const. art. V, § 6; Tex.Gov't Code Ann.

Before SAM BASS, WILSON and DUNN, JJ.

## OPINION

SAM BASS, Justice.

This is an original habeas corpus proceeding. Relator, Kirt Daylen Garrison, asks this Court to discharge him from custody because he is destitute and unable to purge himself of the civil contempt.

The issue is not whether relator was able to pay child support as it came due, or at the time of the hearing on contempt. The issue is whether this Court will grant habeas corpus relief when its original habeas corpus jurisdiction[1] is invoked and the relator, by *uncontroverted* affidavit, testifies he is *presently* unable to pay child support arrearage because he has no money or property that can be sold or mortgaged; he is unemployed and has no prospects of obtaining employment; friends, relatives, and financial institutions have refused to loan him money; and he knows of no other source from which he can obtain money to pay the arrearage, and such testimony is corroborated by a period of incarceration.

An original habeas corpus proceeding is a collateral attack on the contempt decree. *Ex parte Ramzy*, 424 S.W.2d 220, 224 (Tex.1968, orig. proceeding). An order of contempt imposing a coercive restraint is void if the condition for purging the contempt is impossible of performance. *Ex parte Dustman*, 538 S.W.2d 409, 410 (Tex.1976, orig. proceeding). We agree with the San Antonio Court of Appeals that keeping a person until he performs an act, which is beyond his power to perform, is no more acceptable when the inability arises after he is imprisoned than it would be if the inability existed at the time the imprisonment began. *Ex parte Barnes*, 730 S.W.2d 46, 47 (Tex. App.—San Antonio 1987, orig. proceeding).

Relator filed his petition for writ of habeas corpus in this Court on December 18, 1992. We were of the tentative opinion that the writ should issue and, on the same

§ 22.221(d) (Vernon Supp.1993).

date, ordered relator released on bond and scheduled the petition for submission on January 13, 1993. TEX.R.APP.P. 120. At the time relator was released on bond, he had served the criminal portion (six months) of the contempt and 18 days of the civil portion.

Relator's petition certified that Debra Joy (Garrison) Ghanem had been served a copy of the petition through her attorney, and a copy of our order was sent to the attorney. Shortly thereafter, a joint motion of relator and Ghanem requested that Ghanem be given an extension of time in which to respond and that the submission date be correspondingly extended. The motion was granted. The Harris County domestic relations office filed an unverified response on behalf of Ghanem, in accordance with the schedule established by our order granting the extension of time. The response does not controvert relator's affidavit.

The July 25, 1985, decree of divorce of relator and Ghanem obligated relator to pay child support of $90 per week for their son. After a hearing, in an agreed judgment of contempt dated March 9, 1990, the trial court (1) found relator in contempt for failing to pay child support, (2) reduced the arrearage to judgment in the amount of $11,343 together with 10 percent legal interest per annum, (3) provided that relator would pay an additional sum of $50 per week towards the arrearage until it was completely liquidated, (4) directed relator to pay the movant's attorney's fees of $300 and court costs, and (5) ordered relator confined to jail for six months and thereafter until he purged himself of the contempt by paying the arrearage in full.

The trial court ordered the commitment be withheld, contingent upon relator purging himself of the contempt by strictly complying with three conditions: (1) paying the additional $50 every Monday; (2) paying the regular support amount of $90 every Monday; and (3) paying attorney's fees in the amount of $300 on or before June 14,

1990, and court costs of $43 on or before September 14, 1990, to the Harris County domestic relations office.

Relator did not comply with the conditions, and on June 3, 1992, after a hearing,[2] the trial court found relator had failed and refused to comply with the terms of the suspension of commitment and had the present ability to pay all of the child support arrearage due. Accordingly, the court revoked the suspension of commitment and ordered relator confined in accordance with the March 9, 1990, agreed judgment of contempt, that is for 180 days (criminal portion) and thereafter (civil portion) until he paid the arrearage, attorney's fees, and court costs.

Relator asserts the judgment of contempt and commitment are void because he is presently destitute and unable to pay the arrearage, and, therefore, cannot purge himself of the contempt. He supports his assertions with the following affidavit:

My name is Kirt Daylen Garrison. I am the respondent in cause no. 8452626, styled *In the Matter of the Marriage of Debra Joy Garrison and Kirt Daylen Garrison and in the Interest of Kirt Daylen Garrison, Jr., A Minor,* in the 246th District Court, Harris County, Texas, and Relator in this application for writ of habeas corpus. I have no money or property that can be sold or mortgaged in order to obtain the amount necessary for my release. I contacted my friends and relatives, all of them have refused to loan me the $10,527.81, plus attorney's fees in the amount of $300.00, $43.00 court costs and $73.00 commitment fee and stenographer fee that are necessary for my release. I have tried to borrow money from every possible source, including financial institutions, all said attempts have been unsuccessful, I am not employed and at this point in time have no prospects of obtaining gainful employment. I know of no other source from which the $10,527.81, plus

2. We have not been provided with a statement of facts from this hearing or from the one preceding the March 9, 1990, order.

attorney's fees and court costs, can be obtained.

I have been incarcerated in the Harris County Jail since June 3, 1992, as a result of this matter.

Relator does not challenge the order of contempt and commitment, except to say he has no *present* ability to purge himself of the contempt. He relies on *Dustman* and *Ex parte Peters*, 770 S.W.2d 640 (Tex. App.—Houston [1st Dist.] 1989, orig. proceeding).

Ghanem first argues relator is not entitled to habeas corpus relief because he has not provided a statement of facts from the trial court hearings, citing *Ex parte Occhipenti*, 796 S.W.2d 805 (Tex.App.—Houston [1st Dist.] 1990, orig. proceeding). In her second point, she argues relator is not entitled to habeas corpus relief because he has failed to establish that the contempt order or commitment order is void, either because the trial court lacked jurisdiction or because the proceeding lacked due process. Finally, she contends relator is not entitled to habeas corpus relief because he has failed to conclusively establish inability to pay child support. According to Ghanem, we should decline to follow *Dustman* and *Peters*, and follow the more recent case of *Ex parte King*, 819 S.W.2d 944 (Tex.App.—Houston [14th Dist.] 1991, orig. proceeding).

Ghanem's first argument is without merit. Relator asserts in his affidavit to this Court that he is *presently* unable to pay child support arrearage. Ghanem has not contradicted that affidavit. Evidence of relator's inability to pay presented at the contempt hearing more than six months ago shown in a statement of facts may be relevant, but is not necessary to show his present, uncontested inability to pay. There was no issue of inability to pay in *Occhipenti*. We held in *Occhipenti* that it was the relator's burden to demonstrate that he did not validly waive his right to counsel, and that he had not sustained his

burden because he failed to present us with a statement of facts. 796 S.W.2d at 809.

■ Ghanem's second point is also without merit. A court of appeals will treat a contempt order as void if the evidence conclusively establishes that it was not within the power of the relator to perform the act or acts that would release him from the punishment authorized by the trial court's judgment, including payment of child support arrearage. *See Ramzy*, 424 S.W.2d at 224; *Ex parte Dean*, 517 S.W.2d 365, 367 (Tex.Civ.App.—Houston [1st Dist.] 1974, orig. proceeding).

In *Peters*, 770 S.W.2d at 640–41, and *Ex parte Mabry*, 792 S.W.2d 588, 589–90 (Tex. App.—Houston [1st Dist.] 1990, orig. proceeding), this Court held an affidavit that accompanied a petition for writ of habeas corpus filed in the appellate court, similar to the one here, uncontradicted after an opportunity to do so, and corroborated by some period of incarceration, conclusively established [3] that it was not within the relator's power to perform that which would result in his release. We ordered Peters and Mabry discharged.

■ We recognize the general rule is that evidence given by an interested witness, such as relator here, even though uncontradicted, presents an issue to be determined by the trier of fact. *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex.1990); *Voudouris v. Walter E. Heller & Co.*, 560 S.W.2d 202, 207 (Tex. Civ.App.—Houston [1st Dist.] 1977, no writ). However, conclusive effect may be given to the testimony of an interested witness provided that the testimony is clear, direct, and positive and there are no circumstances tending to discredit or impeach the same. *Ragsdale*, 801 S.W.2d at 882; *Voudouris*, 560 S.W.2d at 207. There is added reason for recognizing the exception when a party has the means and opportunity of disproving the testimony, if it were not true, and fails to do so. *Rags-*

---

3. We note, as we did in *Mabry*, 792 S.W.2d at 590, that there are no contested allegations to be resolved. The habeas corpus power of this Court does not extend to the determination of

fact issues. *See Ramzy*, 424 S.W.2d at 227 (Norvell, J., concurring). There are no fact issues to be determined here because the affidavit is uncontradicted.

*dale,* 801 S.W.2d at 882; *Voudouris,* 560 S.W.2d at 207.

 As in *Peters* and *Mabry,* we find relator's uncontradicted affidavit attached to his petition for writ of habeas corpus, corroborated by his 18 days of incarceration under the civil portion of the contempt order and six months of incarceration under the criminal portion, conclusively establishes it is not within his power to *presently* perform that which would result in his release. We decline to follow *King* because we can find no law that states a court of appeals, in the exercise of its original habeas corpus jurisdiction, must either abate a proceeding to the trial court for a fact hearing or deny habeas corpus relief in the absence of a current statement of facts, when the fact of relator's current inability to pay is undisputed. *See, e.g., King,* 819 S.W.2d at 946–47.

We order relator discharged from custody, noting that his discharge does not relieve him of his obligation to pay the child support arrearage, attorney's fees, and court costs.

DUNN, J., dissents.

DUGGAN, J., requested a vote to determine if the cause should be heard en banc, TEX.R.APP.P. 79(d), (e), in which DUNN, O'CONNOR and WILSON, JJ., joined.

OLIVER–PARROTT, C.J., and SAM BASS, COHEN, MIRABAL and HEDGES, JJ., voted against en banc consideration.

DUNN, Justice, dissenting.

I dissent. There are several reasons why I believe this Court should not grant relator's habeas corpus relief: the only evidence of relator's inability to pay is a conclusory affidavit, coupled with a period of incarceration; without a statement of facts, the burden of proving ability to pay impermissibility shifts to the real party in interest; and the legislature has provided a mechanism for parties such as relator to establish a present inability to pay. Additionally, the cases relied upon by the majority should be overruled.

I agree with the majority that this Court has original jurisdiction in habeas corpus proceedings. I also agree that a habeas corpus proceeding is a collateral attack on a contempt decree and that the order forming the basis of incarceration must be found void in order to release relator. *Ex parte Dustman,* 538 S.W.2d 409, 410 (Tex. 1976, orig. proceeding); *Ex parte Ramzy,* 424 S.W.2d 220, 224 (Tex.1968, orig. proceeding). This Court can determine whether habeas corpus relief should be granted where the voidness of the order is based upon the relator's inability to pay. *See Ex parte Occhipenti,* 796 S.W.2d 805, 807 (Tex.App.—Houston [1st Dist.] 1990, orig. proceeding). However, "where the granting of the writ of habeas corpus turns on factual evidence such as inability to perform the order ... the reviewing court cannot determine the issue unless the application is accompanied by a statement of facts developed at the contempt hearing. A relator must be prepared to conclusively show his entitlement to a writ. In the absence of a statement of facts of the contempt hearing, the reviewing court must presume that there was evidence to support the court's contempt judgment." *Ex parte Linder,* 783 S.W.2d 754, 760 (Tex. App.—Dallas 1990, orig. proceeding) (citations omitted). In order to conclusively establish the factual issue of inability, an appellate court must review the statement of facts supporting the judge's finding of ability to pay, as well as any other facts presented. *See Ex parte Rohleder,* 424 S.W.2d 891, 892 (Tex.1967, orig. proceeding).

In this case relator has brought forward a certified copy of his divorce decree awarding him, among other properties, the following: the cash in his possession or control; the rights to and proceeds from any profit-sharing plan, retirement plan, pension plan, employee stock option plan, employee savings plan, accrued unpaid bonuses, except for the 50 percent share of relator's retirement in Building Specialties, Inc. awarded to his former wife; a 1979 Oldsmobile Cutlass; and a 1983 Monarch bass boat. In addition, we have relator's affidavit, never presented to the trial court,

stating he cannot pay his court-ordered child support, and that he has been incarcerated. The affidavit states he has no money or property, but does not address the disposition of the assets awarded to him in the divorce decree. The majority ignores the evidence of possible assets that relator may have, as well as the trial court's finding of relator's ability to pay. The decision to release relator is based on general assertions in relator's affidavit and the length of his confinement, thereby finding relator's inability to pay conclusively established. However, a general conclusory affidavit submitted by an interested party is not proof of anything. *See Ricalday v. Procunier*, 736 F.2d 203, 207 n. 3 (5th Cir.1984); *Jordan v. Estelle*, 594 F.2d 144, 145–46 (5th Cir.1979). The majority justifies their decision by cases issued from this Court, *Ex parte Peters*[1] and *Ex parte Mabry*[2] and the fact that relator's affidavit was *uncontroverted.* By accepting relator's uncontroverted affidavit, the majority opinion has the effect of shifting the burden to the real party in interest. This is not the law. *See Occhipenti*, 796 S.W.2d at 809; *Linder*, 783 S.W.2d at 760.

In a habeas corpus proceeding, it is the relator's burden, not that of the real party in interest, to bring forth facts supporting his inability to pay. Tex.R.App.P. 120(b)(7). It is unconscionable to require the real party in interest to controvert the relator's general affidavit regarding *inability* to pay when the real party in interest does not have the burden to establish the relator's *ability* to pay. *See Occhipenti*, 796 S.W.2d at 808. Contrary to established law, the majority does not require the statement of facts, ignores the facts in the record as to relator's possible assets, and finds that the uncontroverted affidavit, which asserts no specific factual basis, plus his length of incarceration conclusively establishes his inability to pay. This is illogical.

Further the legislature has addressed the issue of inability to pay child support and established a procedure for enforcement by contempt of child support orders that protects the rights of both parties. Tex.Fam. Code Ann. § 14.40 (Vernon 1986 & Supp. 1993). The statute plainly states that an affirmative defense of inability to pay does not arise unless *evidence is admitted* supporting the defense and the obligor proves his or her inability to obey the order of the court by a preponderance of the evidence. Tex.Fam.Code Ann. §§ 14.40(g) & 14.40(h) (Vernon Supp.1993). The obligor is required to prove by evidence presented to the court; (1) that the obligor lacked ability to provide support in the amount ordered; (2) lacked property that could be sold, mortgaged, or otherwise pledged to raise the funds needed; (3) attempted unsuccessfully to borrow the needed funds; and (4) knew of no source from which the money could have been borrowed or otherwise legally obtained. Tex.Fam.Code Ann. § 14.40(g).

Although he could have presented the issue of his present inability to pay to the trial court, relator did not choose to do so. *See Ex parte King*, 819 S.W.2d 944, 946 (Tex.App.—Houston [14th Dist.]1991, orig. proceeding). This Court does not know what evidence relator presented at the contempt hearing since we do not have the statement of facts from that hearing; all we know is that the trial court was not persuaded.

Before *Peters* and *Mabry*, there was no law permitting the discharge of a contemnor from incarceration for civil contempt based solely on a general affidavit filed with the appellate court corroborated by a period of incarceration. This Court, under the facts in *Peters* and *Mabry*, held that a relator's uncontroverted affidavit, corroborated by some period of incarceration, 160 days and 20 days, respectively, conclusively established a lack of *present* ability to pay. *Peters* and *Mabry* were wrongly decided and should be overruled because they impermissibly shift the burden of bringing forth the statement of facts to the real party in interest. *See, e.g., Occhipenti*, 796 S.W.2d at 809; *Linder*, 783 S.W.2d at 760 (both cases discussing that to require

---

1. 770 S.W.2d 640 (Tex.App.—Houston [1st Dist.] 1989, orig. proceeding).

2. 792 S.W.2d 588 (Tex.App.—Houston [1st Dist.] 1990, orig. proceeding).

the movant for contempt to show relator's valid waiver of counsel shifts burden of proof in a habeas corpus proceeding to the real party in interest). Where the granting of the writ of habeas corpus turns on factual evidence such as inability to perform the court's order, the reviewing court cannot determine the issue unless the application is accompanied by a statement of facts developed at the contempt hearing. *Linder*, 783 S.W.2d at 760; *Ex parte Hemmitt*, 580 S.W.2d 51, 51–52 (Tex.Civ.App.— Houston [14th Dist.] 1979, orig. proceeding). In the absence of a statement of facts, the court considering a habeas corpus application will presume there was evidence to support the trial court's judgment of contempt and ability to pay. *Ex parte Savelle*, 398 S.W.2d 918, 921 (Tex.1966, orig. proceeding); *Ex parte Wagner*, 368 S.W.2d 185, 187 (Tex.1963, orig. proceeding); *King*, 819 S.W.2d at 946; *Linder*, 783 S.W.2d at 760; *Ex parte Nivens*, 592 S.W.2d 1, 1 (Tex.Civ.App.—Houston [1st Dist.] 1979, orig. proceeding). In the case before us we have the trial judge's finding of ability to pay; however, the majority ignores this finding.

In *Peters*, the relator filed an affidavit with his petition for writ of habeas corpus that averred he had no money, no savings, no ability to borrow money from any source, and no employment. 770 S.W.2d at 640. His statements were uncontradicted. *Id.* There was no statement of facts or any other evidence, other than his affidavit, before this Court. This Court, based on this kind of record, stated the duration of his incarceration, 160 days for civil contempt, corroborated his uncontradicted "testimony," [3] and held he had conclusively established it was not within his power to perform the act that would result in his release. *Id.* at 640–41. In support, this Court cited *Dustman*, 538 S.W.2d 409, and *Ex parte Fiedler*, 446 S.W.2d 698 (Tex.Civ. App.—San Antonio 1969, orig. proceeding). *Fiedler* and *Dustman* do not support such a conclusion.

In *Fiedler*, the relator did not file an affidavit in connection with his habeas cor-

pus petition; instead, he brought forward the *record from three earlier hearings before the trial court*, from which the appellate court determined that such evidence conclusively established his inability to perform the court's order requiring him to pay the child support arrearage. 446 S.W.2d at 700. The San Antonio Court of Appeals reviewing the records made at the hearings before the trial court found that there was no testimony from any source that attempted to discredit, impeach, or disprove the relator's assertions relative to his inability to make the payments ordered. *Id.* at 701. The court also stated that his incarceration for more than seven days before filing his petition was some corroboration of his uncontradicted testimony. *Id.* The *Fiedler* court held that the trial court exceeded its power in ordering the relator imprisoned until he paid the arrearage because the uncontradicted record was that he could not make such a payment and, therefore, could not purge himself of the contempt.

In *Dustman*, the supreme court reviewed the relator's *uncontradicted testimony from the hearing before the trial court*, that he was unable to pay the arrearage. 538 S.W.2d at 410. The relator also filed an affidavit with the supreme court, stating his annual gross salary for the year and that he was unable to borrow money to secure his release. Citing *Fiedler*, the court found the duration of Dustman's incarceration to be some corroboration of his uncontradicted testimony, and held the trial court exceeded its power in ordering the relator imprisoned until the arrearage was paid. *Dustman*, 538 S.W.2d at 410.

In both *Dustman* and *Fiedler*, the courts had before them a statement of facts from hearings in the trial court on which to base their decisions. The court in *Fiedler* also had relator's affidavit. What *Dustman* and *Fiedler* allow a court of appeals to do when reviewing the trial court record of the relator's uncontradicted testimony, is to use the period of incarceration for civil contempt as corroboration of such testimony. *They do not stand for the proposi-*

---

3. His only testimony was his affidavit written in general conclusory language.

*tion that the relator's uncontroverted affidavit, filed with the appellate court, plus a period of incarceration, alone are sufficient to conclusively establish his or her inability to pay. See also King,* 819 S.W.2d at 946.

The facts in *Mabry* were virtually identical to those in *Peters,* except the period of incarceration was only 20 days. 792 S.W.2d at 589. Again, this Court discharged the relator, citing *Dustman* and *Peters.*[4] *Id.* at 590. While *Peters* supported this Court's decision in *Mabry, Dustman* did not.

Because relator produced only an affidavit consisting of general conclusory statements, unsupported by facts, and failed to bring forward the statement of facts from the hearing that formed the basis of his contempt order, this Court is unable to review his present inability to pay. Therefore, I would deny relator habeas corpus relief and order him remanded to the custody of the Sheriff of Harris County to complete the terms of the order of commitment dated June 3, 1992, signed by the Judge of the 246th District Court of Harris County, Texas, in cause number 84–52626.

---

**4.** I dissented in *Mabry,* and found the judgment void for reasons unrelated to relator's present inability to pay. 792 S.W.2d at 590.